### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

KIRKENDOLL MANAGEMENT, LLC
   Plaintiff,

VERSUS

U.S. SPECIALTY INSURANCE COMPANY
   Defendant.

CIVIL ACTION NO.: 22-2634

JUDGE:

MAGISTRATE:

### *JURY TRIAL DEMANDED*

### COMPLAINT

**NOW COMES**, plaintiff, Kirkendoll Management, LLC, who respectfully submits this Complaint against defendant, U.S. Specialty Insurance Company, and alleges as follows:

### PARTIES

**1.**

Plaintiff, Kirkendoll Management, LLC ("Kirkendoll"), is a Colorado limited liability company. Kirkendoll has two members who are each domiciled in, and citizens of, the State of Louisiana:

   (1)   John Kirkendoll is an individual domiciled in, and a citizen of, the State of Louisiana.

   (2)   Piper Kirkendoll is an individual domiciled in, and a citizen of, the State of Louisiana.

Accordingly, Kirkendoll is a citizen of the State of Louisiana.

**2.**

On information and belief, defendant, U.S. Specialty Insurance Company ("USSIC"), is a corporation, incorporated and domiciled in the State of Texas, with its principal place of business in Houston, Texas. USSIC, therefore, is a citizen of the State of Texas.

## JURISDICITION

### 3.

This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## VENUE

### 4.

Venue is proper in this judicial district pursuant to articles 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

## FACTS

## I.    THE POLICY.

### 5.

Kirkendoll operates businesses in New Orleans and owns an Aircraft that has been housed at the Lakefront Airport in New Orleans.

### 6.

On or about March 23, 2021, USSIC issued to Kirkendoll a renewal of a Aircraft Insurance Policy, Number GA00177064-08, covering the policy period of March 23, 2021 to March 23, 2022 (the "Policy"), for a 1981 Mitsubishi MU-2B-60 Marquise aircraft, FAA Number "N3MA" (the "Aircraft").

**7.**

The Policy covers, among other things, damage or loss to the Aircraft:

1. What **We** Cover

   a. Coverage F covers direct physical loss of or damage to **your aircraft** caused by an **accident** while the **aircraft** is not **in motion**.

   b. Coverage G covers direct physical loss of or damage to **your aircraft** caused by an **accident** while the **aircraft** is **in motion**.

3. What **We** Will Pay (Less Deductible)

   a. Destroyed **Aircraft**
      If the cost of repair when added to the value of the **aircraft** after it is damaged and prior to repairs equals or exceeds the agreed **value** it is a destroyed **aircraft**.

      If **your aircraft** is destroyed, **we** will pay the **agreed value** of the **aircraft** less the applicable deductible. **We** will take the destroyed **aircraft**.

3. What **We** Will Pay (Less Deductible)

   b. Damaged **Aircraft**

      If **your aircraft** is damaged and not destroyed, **we** will pay the reasonable cost of repair after the **aircraft** is repaired, but **we** will not pay more than the **agreed value** less the applicable deductible.

      If the estimated cost of repair is more than the **agreed value** of the **aircraft**, **we** will pay the **agreed value** less the applicable deductible and **we** will take the damaged **aircraft**.

**8.**

"Aircraft" means:

e. **Aircraft** means the aircraft shown in Item 5 of **your** Coverage Identification Page or qualifying under PART FIVE of **your** policy.  It includes the airframe; landing gear; propulsion system (including engine(s), accessories and propeller(s) or rotor(s)); flight and engine instruments; communication/navigation system; electrical system; flight control system; fuel system; hydraulic system; and pressurization system.

Parts usually mounted or attached to the aircraft are included while temporarily removed as long as they are not replaced by other parts;

**9.**

The Policy indicates $480,000 as the agreed value of the Aircraft.

## II.   KIRKENDOLL'S LOSSES CAUSED BY HURRICANE IDA

**10.**

Over the last several years, Kirkendoll's Aircraft was stored either in a hangar or at an outdoor area at Lakefront Airport, New Orleans, Louisiana. The Aircraft's cabin was in good condition and free from any mold or water damage.

**11.**

On August 29, 2021, Hurricane Ida made landfall in South Louisiana as a category 4 or 5 storm, with winds up to 150 mph.

**12.**

Hurricane Ida caused significant water intrusion into the Aircraft's cabin and damage to its exterior devices.

**13.**

As a result of this water intrusion, the aircraft sustained significant water damage to the interior cabin, including but not limited to, saturating all soft goods on the interior of the Aircraft such as all seat materials, headliner and sidewall materials, wood components, all

insulation materials, all carpet materials, and all cabin floorboards, and causing subsequent mold damage.

**14.**

The Aircraft also sustained damage to its landing gear actuators and motors due to the hurricane.  Upon information and belief, these damages occurred from submersion in salt water, extreme winds and storm surge, water and debris and/or other storm related causes.

**15**.

The Aircraft is completely ruined, as the cost of repairs well exceeds the value of the Aircraft.  Alternatively, the Aircraft is severely damaged.

## III.    USSIC's BAD FAITH HANDLING OF KIRKENDOLL'S PROPERTY DAMAGE CLAIM.

**16.**

On or about August 29, 2021, Kirkendoll contacted USSIC and made a claim for property damages to the Aircraft. USSIC assigned the property damage claim to Curt Rush.

**17.**

USSIC sent representatives to inspect the Aircraft on two occasions:  first on September 23, 2021 by Bill Coachman of McLarens General Aviation; and again, on October 20, 2021, by Sandy Dapkunas of Trident Engineering.

**18.**

According to the Mr. Coachman, the Aircraft's paint, exterior structures, and exterior equipment were in poor condition with rust on most of the hardware, mold and mildew growth in the engines and fuselage, and condensation present between the glass panes of half of the windows.

**19.**

Mr. Coachman noted that the interior cabin furnishings and equipment revealed a strong mildew and mold smell, mold and mildew growth, heavy exfoliation, and rust. Mr. Coachman further noted that damage to the cabin door's inflatable seal "could allow for water intrusion" and that mold and mildew growth, along with condensation, were found on the sides of the door and on the seal.

**20.**

Mr. Coachman was also present during the second inspection, conducted by Mr. Dapkunas on October 20, 2021. Mr. Coachman observed that the interior mold on the furnishings, sidewall liners, and headlines had grown larger, and the strong odor of mold and mildew inside the cabin had increased since the previous inspection.

**21.**

According to Mr. Coachman, "Dapkunas advised that the observed aircraft damage appears to have developed over a long period of time, and is not likely due to extreme hurricane climate conditions. His report will be provided in due course."

**22.**

Despite evidence of substantial damage to the Aircraft stemming from the high winds and water from Hurricane Ida, USSIC determined that it only owed Kirkendoll $70,000 to cover damage to the landing gear only.

**23.**

Upon information and belief, USSIC ignored evidence linking the damage to the Aircraft to Hurricane Ida in favor of the "long-term damage" narrative to attempt to justify not paying Kirkendoll for the hurricane damage.

**24.**

On May 16, 17, 20 and 25, 2022, counsel for Kirkendoll contacted USSIC and requested, among other things, a copy of the October 20, 2021 inspection report prepared by Ms. Dapkunas of Trident Engineering.

**25.**

USSIC responded to the request by claiming "work product privilege" over its entire "investigation and claim file materials," including the report prepared by Ms. Dapkunas.

**26.**

USSIC's adjuster's report represented to Kirkendoll that "*further claim handling instruction was received* on October 7, 2021 to engage the services of Trident Engineering *as to complete an onsite inspection of N3MA and provide a report as to whether the aircraft sustained damage related to wind and water immersion as caused by Hurricane Ida*." (emphasis added). As alleged above, this inspection occurred on October 20, 2021.

**27.**

However, based on USSIC's assertion that the Trident Engineering report was prepared in anticipation of litigation, one can only surmise that USSIC had already made the decision to largely deny the instant property damage claim before its adjuster had issued a final written report or its engineer—who was apparently hired to determine whether hurricane damage occurred —had seen the damaged property.

**28.**

USSIC's handling of this report and its refusal to provide the basis for denying Kirkendoll's claim is *prima facie* evidence of bad faith.

**29.**

To date, USSIC has refused to cover or pay for the total value of the Aircraft.

**30.**

USSIC's protracted, arbitrary and capricious handling of Kirkendoll's property damage claim is in violation of its duty of good faith and fair dealing mandated under statutory law, as well as the unambiguous terms of the policy.

## COUNT 1: BREACH OF CONTRACT
### (Property Claim)

**31.**

Kirkendoll adopts and realleges each and every allegation set forth in the preceding paragraphs.

**32.**

The Policy is a binding insurance contract by and between Kirkendoll and USSIC.

**33.**

Kirkendoll sustained covered property losses to his 1981 Mitsubishi MU-2B-60 Marquise.

**34.**

Kirkendoll complied with the Policy's terms and conditions; Kirkendoll paid all premiums on the Policy; Kirkendoll provided USSIC with all documents and records requested of it; and all conditions precedent to Kirkendoll's right to recover against USSIC under the Policy have been met, satisfied, or waived.

**35.**

USSIC, however, has breached the Policy in the following, non-exclusive ways:

1.      Denying coverage of Kirkendoll's property damage claim;

2.    Failing to pay Kirkendoll its covered losses; and

3.    Wrongfully withholding information used to justify its claims determination.

**36.**

Kirkendoll has suffered damages as a result of USSIC's breaches of contract for which USSIC is responsible including but not limited to all of Kirkendoll's covered property damage losses, plus interest, and attorney's fees.

**COUNT II: BREACH OF DUTY OF GOOD FAITH**

**37.**

Kirkendoll adopts and realleges each and every allegation set forth in the preceding paragraphs.

**38.**

By failing to pay all covered losses under the Policy as required by its terms and conditions, USSIC breached its contractual obligations to Kirkendoll, the direct and proximate result of which caused Kirkendoll to sustain damages and losses in an amount to be proven at trial.

**39.**

In breaching the Policy, USSIC breached its corollary duties of good faith as contemplated by articles 1759, 1983, 1996, and 1997 of the Louisiana Civil Code and other applicable laws. USSIC, therefore, is liable to Kirkendoll for all foreseeable and unforeseeable damages that its conduct caused Kirkendoll.

## Count III: STATUATORY PENALTIES AND ATTORNEY'S FEES

**40.**

Kirkendoll adopts and realleges each and every allegation set forth in the preceding paragraphs.

**41.**

USSIC acted with actual knowledge or with reckless disregard of the lack of a reasonable basis in denying Kirkendoll's claims, failing to reasonably evaluate the available information, denying the claim, and failing to pay the claim. The foregoing, as well as USSIC's overall handling of this claim, was arbitrary, capricious, and without probable cause and amounts to a failure by USSIC to comply with its statutory obligations under La. Rev. Stat. §§ 22:1892 and/or 1973.

**42.**

As a result of its arbitrary and capricious failure to pay Kirkendoll's claims within thirty (30) days of its receipt of satisfactory proofs of loss, and other violations, USSIC is liable under La. Rev. Stat. § 22:1892(B)(1), in addition to the amount of the loss, for a penalty of 50% of the difference between the amount paid or tendered and the amount found to be due, as well as reasonable attorney fees and costs.

**43.**

As a result of USSIC's bad faith, arbitrary and capricious conduct, including but not limited to its failure to pay Kirkendoll's claims within sixty (60) days of it receipt of satisfactory proofs of loss, and other breaches of its duty of good faith including its handling of the engineering report, USSIC is liable under La. Rev. Stat. § 22:1973(C), in addition to all general and special damages, for a penalty of two times the damages sustained by Kirkendoll.

**44.**

Kirkendoll requests a trial by jury.

**WHEREFORE**, Plaintiff, Kirkendoll Management, LLC, prays that this Complaint be deemed good and sufficient and after due proceedings are had that judgement be entered in its favor and against defendant, U.S. Specialty Insurance Company, for all relief requested herein and for such other and further relief as is appropriate under the circumstances.

Respectfully submitted

*/s/McClain Schonekas*
Patrick S. McGoey, 23730
Andrea V. Timpa, 29455
McClain Schonekas, 36007
Benjamin O. Flaxenburg, 37682
SCHONEKAS EVANS McGOEY &
McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone:  504-680-6050
Facsimile:  504-680-6051
patrick@semmlaw.com
andrea@semmlaw.com
mcclain@semmlaw.com
benajmin@semmlaw.com

*Attorneys for Plaintiff, Kirkendoll Management, LLC*